UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

PAUL EDWARD LOJEWSKI,

        Plaintiffs,

v.

GARY MINIARD,

        Defendants.
_____/

Case No. 1:22-cv-11829

Honorable Thomas L. Ludington
United States District Judge

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING CERTIFICATE OF APPEALABILITY, AND (3) DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS***

Petitioner Paul Edward Lojewski filed a *pro se petition* for a writ of habeas corpus under 28 U.S.C. § 2254. The habeas petition raises claims concerning the weight of the evidence, evidentiary and instructional errors, and ineffective assistance of trial and appellate counsel. When he filed his petition, Petitioner was in the custody of the Michigan Department of Corrections. According to state records, he is now on parole. At any rate, for the reasons explained below, the Petition will be denied with prejudice, a certificate of appealability will not be issued, and leave to proceed *in forma pauperis* on appeal will be denied.

**I.**

The following facts from the Michigan Court of Appeals are presumed correct on habeas review, *see Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> In 2014, JC and defendant met through JC's brother, AC. By 2016, JC and defendant often spent time together alone. On November 14, 2016, JC and defendant went fishing at Dog Lady Island located in Monroe, Michigan. On their way to Dog Lady Island, defendant put his hand on JC's left thigh near his knee. JC felt uncomfortable, but did not say anything and moved his leg away from defendant's hand. When JC arrived home later that night, he informed his mother that defendant touched him and asked his mother if he should "be worrying about

it" or if it was just a "friendly gesture." His mother told JC that she did not think defendant was "that type of person."

The next day, November 15, 2016, defendant asked JC to go fishing with a group of friends. JC said yes because he wanted to know if the incident that occurred the day before was merely a fluke. While the group was fishing, defendant asked JC to go to defendant's apartment to get something to drink with defendant. Defendant did not ask anyone else in the group to go with him. JC initially said no, but defendant became upset and JC agreed to go. While they were driving, defendant ran his right hand up JC's inner thigh and grabbed JC's penis over JC's red shorts. JC surreptitiously took two photographs of defendant's hand on his penis with his cell phone while pretending to play a game. When they arrived at defendant's apartment, JC and defendant entered defendant's apartment and JC sat down on defendant's La-Z-Boy chair. Defendant sat on the arm of the chair, put his arm around JC, and started to move his hand toward JC's penis. JC stood up to get away from defendant and defendant went to the bathroom. When defendant walked back into the living room from the bathroom, defendant "came up from behind" JC and grabbed JC's penis. JC ran out of the apartment, got into the backseat of defendant's car, and asked defendant to take him home. Despite the fact that JC showed his mother the cell phone photos, his mother did not report the incident to law enforcement. Instead, law enforcement learned of the photos from defendant's landlord who said she saw the photos on the social media platform Facebook. Law enforcement interviewed JC who confirmed that he was the boy in the photos and that the hand belonged to defendant. Defendant was subsequently charged with accosting, enticing, or soliciting a child for immoral purposes, MCL 750.145a, and two counts of CSC-IV, MCL 750.520e.

At trial, the testimony regarding the assault came principally from JC and his mother, who disagreed on several details. For example, despite testimony from his mother that JC sent the photographs to a family friend before sending them to her, JC also testified that he sent the cellular photos only to his mother. JC's mother also testified that she had not gone to law enforcement with the photos because she thought she had handled the issue by confronting defendant and warning him to never be around JC again. However, JC testified that he and his mother did not contact law enforcement because defendant's family sent him and his mother threatening text messages.

*People v. Lojewski*, No. 347111, 2020 WL 4915354, at *1 (Mich. Ct. App. Aug. 20, 2020). On October 24, 2018, a Monroe County jury convicted Petitioner of accosting, enticing, or soliciting a child for immoral purposes, MICH. COMP. LAWS § 750.145a, and two counts of fourth-degree criminal sexual conduct (CSC-IV), MICH. COMP. LAWS § 750.520e (multiple variables). *Id.* at *2. The trial court sentenced Petitioner—a fourth-offense habitual offender under MICH. COMP. LAWS

§ 769.12—to 58 to 180 months of imprisonment for accosting, enticing, or soliciting a child for immoral purposes and 46 to 180 months of imprisonment for each count of CSC-IV. *Id.*

Petitioner appealed his convictions and sentences by right in the Michigan Court of Appeals. *Id.* He raised two claims challenging the weight of the evidence and the prosecutor's failure to properly notify him of his habitual offender status. *Id.* at *2–4. The Michigan Court of Appeals rejected both claims. *See id.* Petitioner then applied for leave to appeal to the Michigan Supreme Court. *See* ECF No. 11-12. On April 27, 2021, the Michigan Supreme Court denied the application because it was "not persuaded that the questions presented should be reviewed by this Court." *People v. Lojewski*, 957 N.W.2d 780, 781 (Mich. 2021).

On July 7, 2021, Petitioner returned to the state trial court and moved for relief from judgment under MICH. CT. R. 6.500, arguing the following:

    I.    Defendant's appellate counsel was ineffective for failing to raise these meritorious issues on defendant's appeal of right.

    II.    The Court erred reversibly in (1) stopping the prosecution from impeaching its witness (2) submitting to the jury evidence after the close of proofs which was prejudicial to the defendant, (3) admitting substantively the second presentation of defendant's hands when the first presentation was offered as an object to refresh memory under Michigan Rule of Evidence 612, (4) allowing a juror to ask a question directly to the court and answering that question without consulting the parties, (5) failing to instruct the jury concerning Michigan Rule of Evidence 612 and how evidence introduced under Michigan Rule of Evidence 612 may be considered, and (6) allowing the jury to review the second presentation of defendant's hands even though it was more prejudicial than probative and should have been excluded under Michigan Rule of Evidence 403.

    III.    Trial counsel was ineffective for (1) failing to object to the introduction of evidence after the close of proofs, (2) failing to object to the jury viewing the second presentation of defendant's hands because the first presentation was admitted under Michigan Rule of Evidence 612, (3) failing to object to the court's answering of a juror question without following the established and agreed upon procedure, (4) failing to request a jury instruction concerning Michigan Rule of Evidence 612 and how evidence introduced under Michigan Rule of Evidence 612 may be considered, and (5) failing to object to the jury viewing the presentation of defendant's hands absent the testimony of Lisa Raymer on the grounds that it was more prejudicial than

probative and thus should be excluded under Michigan Rule of Evidence 403.

ECF No. 11-9 at PageID.523–24. On October 12, 2021, the trial court denied the motion. ECF No. 11-10 at PageID.569.

After that, Petitioner applied for leave to appeal to the Michigan Court of Appeals. See ECF No. 11-13. On March 3, 2022, the Michigan Court of Appeals denied the application. ECF No. 11-13 at PageID.953. While the court noted that the trial court erred in certain aspects of its reasoning, it nevertheless concluded that Petitioner "failed to establish entitlement to relief from judgment, and thus, the trial court reached the correct result by denying the motion." *Id*. Petitioner then applied for leave to appeal to the Michigan Supreme Court. ECF No. 11-14. On June 28, 2022, the Michigan Supreme Court denied the application because Petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Lojewski*, 975 N.W.2d 473 (Mich. 2022).

On August 8, 2022, Petitioner filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. ECF No. 1. The Petition advances the following claims:

I. Petitioner is entitled to a new trial because the jury's verdict is against the great weight of evidence.

II. Petitioner's rights under the Sixth and Fourteenth Amendments were violated because the trial court departed from its neutral role by (1) assisting the prosecution in presenting its case, (2) introducing a presentation to the jury after the close of proofs and in contravention of the rules of evidence, (3) responding to a juror's question without consultation with the parties, and (4) failing to provide proper instructions to the jury.

III. Trial counsel rendered ineffective assistance by failing to object to the court's presentation, failing to invoke Michigan Rules of Evidence 612 and 403, and failing to request an instruction regarding evidence admitted under Rule 612.

IV. Petitioner's claims are not procedurally defaulted because appellate counsel was ineffective for failing to raise the issues identified in Parts II and III on direct appeal.

ECF No. 1 at PageID.12. Respondent filed an answer to the petition contending that a portion of Petitioner's first claim is procedurally defaulted, and all claims lack merit. ECF No. 10.

## II.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) constrains federal courts' review of state-court decisions in habeas cases. *See Smith v. Nagy*, 962 F.3d 192, 198 (6th Cir. 2020). Indeed, if a state court has already adjudicated a claim on the merits, a federal court may grant relief only if the state court's decision: (1) ran contrary to, or unreasonably applied, "clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) rested on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The "contrary to" and "unreasonable application" clauses of 28 U.S.C. § 2254(d)(1) have "independent meaning." *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000). A state-court decision is "contrary to" clearly established federal law if it (1) applies a rule that contradicts governing Supreme Court law; or (2) confronts a set of facts "materially indistinguishable" from a decision of the Supreme Court and yet arrives at a different result. *Id.* at 405–06. A state-court decision involves an "unreasonable application" of clearly established federal law if it (1) correctly identifies the governing legal rule but unreasonably applies it to the facts of the instant case, or (2) either unreasonably extends an established legal principle to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Id.* at 407.

The Supreme Court has emphasized that "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 410. And later Supreme Court decisions have interpreted this directive to mean that an unreasonable application "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *White v. Woodall*,

572 U.S. 415, 419 (2014) (citation modified). AEDPA "stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). But the state court's error must be "well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. At bottom, AEDPA "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Id.* And for claims adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III.

#### A. Weight of the Evidence

Petitioner's first claim contends that his verdict ran contrary to the great weight of the evidence and was insufficient to sustain his convictions for accosting a child for immoral purposes and two counts of fourth-degree criminal sexual conduct. *See* ECF No. 1 at PageID.4. That argument, however, does not state a claim under state or federal constitutional law.[1]

Michigan law permits a new trial "where the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *People v. Lemmon*, 576

---

[1] Respondent argues that Petitioner's sufficiency challenge is unexhausted in the state courts and now procedurally barred because he failed to raise the issue either on direct appeal or in his motion for relief from judgment and no longer has an available state court remedy. *See* 28 U.S.C. § 2254(c). But this Court need not address that defense because it is not a jurisdictional bar to review of the merits. *See, e.g., Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005). Because Petitioner's claim is easily resolvable on the merits, the merits will be addressed. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).

N.W.2d 129, 137 (Mich. 1998) (citation modified). That remedy is distinct from the constitutional guarantee of due process, which addresses only whether the evidence was insufficient to support a conviction. *Id*. at 133, n.8. As a result, a claim that a verdict is against the great weight of the evidence alleges an error of state law, not a federal constitutional violation, and thus is not cognizable on habeas review. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (holding that "federal habeas corpus relief does not lie for errors of state law"); *Threatt v. Harry*, No. 18-1709, 2018 WL 6721774, *2 (6th Cir. Oct. 10, 2018) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)) (holding that a claim that a conviction is against the great weight of the evidence does not present a federal constitutional question).

But a sufficiency of the evidence claim is cognizable on habeas review. The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime charged." *In re Winship*, 397 U.S. 358, 364 (1970). The inquiry is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). That standard must be applied with reference to the substantive elements of the offense as defined by state law. *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting Jackson, 443 U.S. at 324 n.16).

On habeas review, a court applies the sufficiency standard through the lens of 28 U.S.C. § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Under AEDPA, a petitioner must overcome two layers of deference: first, to the jury's role in weighing the evidence at trial, and second, to the state court's judgment on appellate review—so long as those determinations were reasonable. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). It is for the jury, not the court, to decide what conclusions to draw from the evidence. *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per

curiam). Reviewing courts do not reweigh evidence or reassess witness credibility. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). So the "mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." *Matthews*, 319 F.3d at 788–89. Indeed, the testimony of a single, uncorroborated witness is generally enough to sustain a conviction if it establishes each element of the offense beyond a reasonable doubt. *Brown v. Davis*, 752 F.2d 1142, 1144–45 (6th Cir. 1985).

Relevant here, the offense of accosting a child for immoral purposes requires proof that the defendant accosted, enticed, or solicited a child under the age of sixteen with the intent to induce or compel the child to commit, or submit to, an immoral act, sexual intercourse, gross indecency, or any other act of depravity or delinquency—or that he encouraged the child to do so. MICH. COMP. LAWS § 750.145a; *People v. Kowalski*, 803 N.W.2d 200, 208 (Mich. 2011). Under Michigan law, a person is guilty of CSC-IV if he sexually contacts another person and uses force or coercion to accomplish the sexual contact. MICH. COMP. LAWS § 750.520e(1)(b). The definition of "force or coercion" includes the following:

(1) When the actor overcomes the victim through the actual application of physical force or physical violence;
(2) When the actor coerces the victim to submit by threatening to use force or violence on the victim, and the victim believes that the actor has the present ability to execute these threats; or
(3) When the actor coerces the victim to submit by threatening to retaliate in the future against the victim, or any other person, and the victim believes that the actor has the ability to execute this threat.

MICH. COMP. LAWS § 750.520b(1)(f)(i)–(iii). The term "force" includes the exertion of strength or power on another person. *People v. Premo*, 540 N.W.2d 715, 717 (Mich. 1995) (holding that the "[d]efendant's pinching of the victims' buttocks satisfies the force element of the statute") (citation modified)). The term "coercion" includes conduct that creates a reasonable fear of danger. *People v. McGill*, 346 N.W.2d 572, 575–76 (Mich. Ct. App. 1984).

Here, the prosecution submitted sufficient evidence to establish the elements of each offense, as well as two counts of CSC-IV. As for accosting a child for immoral purposes, the victim testified that when he was 13 years old, Petitioner placed his hand on the victim's upper thigh, close to his genital area, while in Petitioner's car. ECF No. 11-5 at PageID.332, 342–43. The victim also testified that at some point, Petitioner's hand was "touching [the victim's] penis" outside of his clothing and that he was scared something would happen to him. *Id*. at PageID.342, 349. Moreover, the victim took two to three pictures of Petitioner's hand while the assault occurred. *Id*. And these pictures were admitted into evidence. ECF No. 11-5 at PageID.346–48. The victim further testified that after he and Petitioner arrived at Petitioner's apartment, a second sexual assault occurred where Petitioner was "putting his hands toward [the victim's] penis again." ECF No. 11-5 at PageID.352. When the victim realized what was happening, he stood up. *Id.* Petitioner then went behind the victim and touched his penis. *Id*.

Although the victim's testimony alone sufficiently sustained Petitioner's convictions for accosting a child for immoral purposes and two counts of CSC-IV, *see United States v. Howard*, 218 F.3d 556, 565 (6th Cir. 2000) (citing *Gilbert v. Parke*, 763 F.2d 821, 826 (6th Cir. 1985)), the victim's mother, Lisa Raymer, corroborated his testimony. During trial, Raymer testified that when she confronted Petitioner about the sexual assaults, he apologized and stated that "[h]e didn't understand why he did it and [asked] not involve the cops." ECF No. 11-5 at PageID.407.

Petitioner contends that the testimony was insufficient due to inconsistencies. But disputes over credibility go to the weight of the prosecution's evidence, not its sufficiency. *Martin*, 280 F.3d at 618. Assessing the credibility of witnesses lies beyond the scope of federal habeas review. *Gall v. Parker*, 231 F.3d 265, 286 (6th Cir. 2000). That task belongs to the factfinder at trial, not

a federal habeas court. *Jackson*, 443 U.S. at 326; *Walker v. Engle*, 703 F.2d 959, 969–70 (6th Cir. 1983).

In sum, viewing the record in the light most favorable to the prosecution, the jury reasonably found Petitioner guilty beyond a reasonable doubt. Petitioner's first claim therefore affords no basis for habeas relief.

### B. Sixth and Fourteenth Amendment Claim Based on Evidentiary/Instructional Errors

In his second claim, Petitioner argues that the trial court committed several evidentiary and instructional errors entitling him to relief under the Sixth Amendment. ECF No. 1 at PageID.5. Specifically, he claims the following:

- The trial court erroneously prevented the prosecution from impeaching its witness;
- The trial court submitted evidence of Petitioner's hands to the jury after close of proofs;
- The trial court admitted evidence for the jury's consideration, which was allowed only under Michigan Rule of Evidence 612;
- The trial court answered a juror's question without consulting the parties;
- The trial court failed to instruct the jury regarding application of Michigan Rule of Evidence 612; and
- The trial court should have excluded the second presentation of Petitioner's hands to the jury under Michigan Rule of Evidence 403.

*See id.* at PageID.35–44.

Petitioner raised these claims in his motion for relief from judgment. ECF No. 11-9 at PageID.523. The state trial court denied the claims because these arguments were raised and previously addressed by the Michigan Court of Appeals. ECF No. 11-10 at PageID.570. On review of Petitioner's application for leave to appeal, the Michigan Court of Appeals concluded that the trial court erred by denying the motion on this basis but determined that Petitioner's arguments nevertheless lacked merit. ECF No. 11-13 at PageID.953. Thus, the Michigan Court of Appeals

summary affirmance of the denial of Petitioner's motion is a merits decision entitled to AEDPA deference. *See Harrington*, 562 U.S. at 99; *see also Johnson v. Williams*, 568 U.S. 289, 298 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012).

Concerning evidentiary errors, Petitioner has not shown that the state courts unreasonably applied federal law or contravened clearly established federal precedent. Generally, errors in the admission or exclusion of evidence by a state court do not furnish a basis for federal habeas relief. *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012) (quoting *Collier v. Lafler*, 419 F. App'x 555, 558 (6th Cir. 2011)); *see also Estelle*, 502 U.S. at 67–68. Relief may be warranted only when the ruling crosses a much higher threshold—when it is so fundamentally unfair that it amounts to a violation of due process. *See Moreland*, 699 F.3d at 923. That is no small burden: Petitioner must show that the evidentiary decision was "so egregious that it resulted in a denial of fundamental fairness." *Giles v. Schotten*, 449 F.3d 698, 704 (6th Cir. 2006) (citing *Baze v. Parker*, 371 F.3d 310, 324 (6th Cir. 2004)); *see also Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2006). And even then, the Sixth Circuit "has typically required a Supreme Court case establishing a due process right" concerning "that specific kind of evidence." *Moreland*, 699 F.3d at 923.

Petitioner contends that the trial court erred in its evidentiary rulings. But he does not claim that those rulings rendered his trial fundamentally unfair. Instead, his objections rest on the ground that the trial court misapplied Michigan law and the Michigan Rules of Evidence. *See* ECF No. 1 at PageID.36 (arguing the court improperly barred witness impeachment under MRE 607 and 612); *id.* at PageID.38 (arguing the court submitted new evidence to the jury after proofs had closed in violation of Michigan law); *id.* at PageID.40 (arguing the court admitted substantive evidence under MRE 612); *id.* at PageID.43 (arguing the second display of Petitioner's hands to the jury violated MRE 403). Because each of these arguments exclusively raises questions of state law,

they are not cognizable on habeas review. *See Estelle*, 502 U.S. at 67–68. Thus, Petitioner is not entitled to relief on these claims.

Next, Petitioner argues that the trial court should have consulted the Parties before instructing him to raise his hand. ECF No. 1 at PageID.42. The state-court record belies Petitioner's claim. During deliberations, the jury submitted a question to the court asking to view Petitioner's right hand. ECF No. 11-6 at PageID.478. In the presence of the parties, and without objection from counsel, the trial court instructed Petitioner to raise his right hand for the jury. *Id*. at PageID.479 ("Mr. Bartlett has no objection, so I'll ask Mr. Lojewski to stand up, raise your right hand for me, please."). A juror then asked the court: "What about the other one?" *Id*. The court then instructed Petitioner to raise his other hand. *Id*.

Based on this state-court record, Petitioner does not establish the impropriety of the trial court's actions. And to the extent any error occurred, Petitioner fails to explain how the court's actions prejudiced his trial, considering the jury had already viewed his hands once before. ECF 11-5 at PageID.417. Petitioner also cites no federal law or Supreme Court precedent showing that the state courts erred by rejecting this claim. As a result, Petitioner has not met his burden of establishing his entitlement to habeas relief on this claim.

Finally, Petitioner challenges the trial court's jury instructions. But he has not shown that any error entitles him to relief. At the outset, the Supreme Court "has repeatedly rebuffed due process challenges to erroneous jury instructions." *Levingston v. Warden*, 891 F.3d 251, 255 (6th Cir. 2018); *see, e.g., Waddington v. Sarausad*, 555 U.S. 179, 192–94 (2009); *Henderson v. Kibbe*, 431 U.S. 145, 152 (1977). Generally, claims that a trial court misstated an instruction—or declined to give a requested one—do not furnish a basis for habeas review.

The burden is far heavier. Petitioner must show that the instruction "so infected the entire trial that the resulting conviction violates due process." *Henderson*, 431 U.S. at 154; *see also Estelle*, 502 U.S. at 75; *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) (same); *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000) (same). Courts do not judge jury instructions in isolation. Instead, they consider instructions in the context of the charge as a whole and the trial record. *Jones v. United States*, 527 U.S. 373, 391 (1999); *Grant v. Rivers*, 920 F. Supp. 769, 784 (E.D. Mich. 1996). Moreover, the failure to give an instruction that is supported by the evidence does not automatically justify habeas relief—the failure to instruct must have rendered the trial fundamentally unfair. *See Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Daniels v. Lafler*, 501 F.3d 735, 742 (6th Cir. 2007). And a habeas petitioner's "burden is especially heavy [when] no [affirmatively] erroneous instruction was given . . . . An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson*, 431 U.S. at 155. If Petitioner fails to meet this burden, he fails to show that the jury instructions were contrary to federal law. *See Estelle*, 502 U.S. at 75.

Petitioner contends that the trial court erred in declining to give a non-standard instruction on the use of MRE 612, which allows witnesses to use writings or objects to recall past events. According to Petitioner, such an instruction was warranted because defense counsel displayed his hands to the jury during testimony, purportedly to refresh the witness's memory. ECF No. 1 at PageID.42-43. To the extent Petitioner claims the trial court misapplied Michigan law, the argument is not cognizable on federal habeas review. *Estelle*, 502 U.S. at 72. And while the Supreme Court has recognized that the failure to give an instruction may in rare cases render a trial fundamentally unfair, *id.*, Petitioner has not shown that such an instruction was required here—or that its absence had any bearing on the verdict.

At bottom, Petitioner is not entitled to federal habeas relief on his second claim.

### C. Ineffective Assistance of Trial Counsel

Third, Petitioner raises various ineffective-assistance-of-trial-counsel claims related to the arguments discussed above. *See supra* Section III.B. Specifically, Petitioner argues that trial counsel provided ineffective assistance in the following ways: (1) failing to object to the trial court's second presentation of his hands after the close of proofs; (2) failing to object to the second presentation of his hands under MRE 612; (3) failing to object to the trial court answering a juror's question without consulting the parties; (4) failing to request a jury instruction concerning MRE 612; and (5) failing to object to the second presentation of his hands under MRE 403. ECF No. 1 at PageID.47. Petitioner raised these arguments in his motion for relief from judgment, which the trial court denied because he "fail[ed] to show the decisions of trial counsel were not legitimate trial strategy." ECF No. 11-10 at PageID.570.

The trial court's decision did not unreasonably apply federal law or clearly established Supreme Court precedent. To prevail on an ineffective assistance claim in habeas review, a petitioner must show that the state court's ruling was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* sets a demanding standard: a petitioner must establish both (1) that counsel's performance was deficient, and (2) that the deficiency prejudiced the defense. *Id.* at 687. And courts must presume that counsel's conduct fell within the "wide range of reasonable professional assistance," and that the challenged action "might be considered sound trial strategy." *Id.* at 694.

That presumption is reinforced by the doubly deferential posture of habeas review. The standard for federal relief is "difficult to meet." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)). And in the *Strickland* context, "the

question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

Petitioner first faults his counsel for not objecting to the second presentation of his hands to the jury. As the record shows, two such presentations occurred. The first presentation came during the testimony of the victim's mother, who identified Petitioner's hand based on a visible defect. ECF No. 11-5 at PageID.417–18. Defense counsel then asked Petitioner to raise his hands and questioned the witness about which hand bore the defect. *Id.* The second presentation came during jury deliberations, when the jurors requested to see Petitioner's hands again. ECF No. 11-6 at PageID.479. The trial court directed Petitioner to raise them. *Id.*

Counsel's decision not to object to the second presentation falls within the bounds of reasonable trial strategy. Having himself introduced the first presentation, counsel could reasonably conclude that objecting to a second would confuse the jury or draw undue attention to the matter. Courts have recognized that "not drawing attention" to potentially damaging evidence may be a sound trial strategy. *United States v. Caver*, 470 F.3d 220, 244 (6th Cir. 2006). Moreover, because the second presentation was not improper, any objection would have been meritless. Counsel is not ineffective for declining to raise meritless arguments. *Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020); *Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010).

Petitioner also argues that counsel should have requested a non-standard jury instruction under Michigan Rule of Evidence 612. Again, that rule concerns writings or objects used to refresh a witness's recollection. But the record does not support Petitioner's theory. The relevant witness did not testify that she lacked memory of Petitioner's hands; rather, she misidentified which of Petitioner's hands bore a defect. ECF No. 11-5 at PageID.413, 417. So defense counsel had

Petitioner raise his hands to impeach that testimony—not to refresh recollection. *Id.* Because Rule 612 was not implicated, counsel's decision not to request such an instruction was not deficient. *See Cathron v. Jones*, 77 F. App'x 835, 845 (6th Cir. 2003). Nor has Petitioner shown that the absence of the instruction prejudiced the outcome of his case.

In the end, Petitioner has not overcome the deference owed to both trial counsel's strategic decisions and the state court's adjudication of his claims. Accordingly, he is not entitled to habeas relief for his third claim.

### D. Ineffective Assistance of Appellate Counsel

Petitioner next argues that his appellate counsel was constitutionally ineffective for failing to raise the evidentiary/instructional error and ineffective-assistance-of-trial-counsel claims on direct appeal. ECF No. 1 at PageID.55–57. Petitioner first raised his ineffective-assistance-of-appellate-counsel claim in his motion for relief from judgment filed with the state trial court in July 2021. ECF No. 11-9 at PageID.538. The state trial court denied Petitioner's motion in full, noting that "[b]y having the entire case reviewed by the Court of Appeals, it is incongruous to argue Appellate Counsel was ineffective." ECF No. 11-10 at PageID.570.

Petitioner is not entitled to federal habeas relief on his ineffective-assistance-of-appellate-counsel claim. As discussed *supra* Section III.B and III.C., Petitioner's claims lacked merit. And appellate counsel cannot be constitutionally ineffective for failing to make a meritless argument. *Tackett*, 956 F.3d at 375; *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010); *see also Cowans v. Bagley*, 639 F.3d 241, 252 (6th Cir. 2011) ("The standard for ineffective assistance of appellate counsel mirrors the one governing the performance of trial counsel."). Put differently, his appellate counsel was not constitutionally ineffective for failing to raise arguments that had little chance of succeeding. *See United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990) (noting that strategic and

tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of [appellate] counsel"). Thus, Petitioner is not entitled to federal habeas relief on his fourth claim.

In sum, Petitioner has not demonstrated that he is entitled to relief for any of his four claims. As a result, the Petition, ECF No. 1, will be denied with prejudice.

## IV.

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation and quoting citation omitted).

Here, reasonable jurists would not debate this Court's conclusion that Petitioner is not entitled to habeas relief. Thus, a COA will be denied. Petitioner will also be denied leave to appeal *in forma pauperis* because an appeal could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V.

Accordingly, it is **ORDERED** that the Petition for Writ of Habeas Corpus, ECF No. 1, is **DENIED WITH PREJUDICE.**

Further, it is **ORDERED** that a certificate of appealability is **DENIED.**

Further, it is **ORDERED** that leave to appeal *in forma pauperis* is **DENIED.**

**This is a final order and closes this case.**

Dated: September 16, 2025                         s/Thomas L. Ludington
                                                  THOMAS L. LUDINGTON
                                                  United States District Judge